UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                          Case No: 6:25-cr-337-JSS-DCI-1

CHASE DEAN SURIANO,

Defendant.
_____/

### ORDER

On November 19, 2025, Magistrate Judge Leslie Hoffman Price held a detention hearing and ordered Defendant detained pending trial based on his dangerousness to the community. (*See* Dkts. 11, 33.) Defendant moves to revoke or amend the pretrial detention order. (Dkt. 25.) *See* 18 U.S.C. § 3145(b). The Government opposes the motion. (Dkt. 32.) Upon consideration, for the reasons outlined below, the court denies Defendant's motion and adopts the detention order.

### BACKGROUND

Defendant was charged through a criminal complaint with one count of possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B), (Dkt. 1), and was subsequently indicted by a grand jury on that count as well as three counts of receipt of child pornography under 18 U.S.C. § 2252A(a)(2), (Dkt. 13), after additional investigation reportedly connected thousands of images and hundreds of videos of child pornography to Defendant, (*see* Dkt. 32 at 7). According to the criminal complaint, around 11:30 PM EST on January 20, 2025, Defendant shared his computer screen with a device belonging to a Federal Bureau of Investigation (FBI)

informant, who provided federal agents with the device and allowed them to extract its data. (Dkt. 1 at 4.)  Allegedly, as a result of the screen sharing, the informant's device contained numerous images of child pornography, including an image of a three- to five-year-old child "holding the penis of an adult male next to the child's face" and an image of a six- to eight-year-old girl who was "nude from the waist down in a seated position" exposing her vagina.  (*Id.* at 6.)  The complaint indicates that after identifying Defendant as the person who had shared his screen, agents executed search warrants for his residence and devices.  (*Id.* at 12–13.)  Reportedly, when agents searched Defendant's residence, he stated that he had a computer that only he accessed, and a search of that computer uncovered a USB with numerous images and videos of child pornography.  (*Id.*)  The complaint describes three videos from the USB ranging from approximately one minute to six and a half minutes in length and depicting the vaginal, oral, anal, and digital penetration of children between the ages of three and eight years old, the rape of a toddler, and bondage.  (*Id.*)

The complaint also describes an August 2017 incident when Defendant purportedly sexually assaulted a seven-year-old male family member at Defendant's residence while the two were under the supervision of Defendant's parents.  (*Id.* at 9–10.)  According to the complaint, the victim reported that Defendant touched the victim on the inside of the victim's posterior with a finger and a marker, that Defendant tried to put Defendant's penis inside the victim's posterior even though the victim cried out in pain, and that Defendant performed oral sex on the victim and made the victim perform oral sex on Defendant.  (*Id.*)  Reportedly, the victim further stated that

Defendant told the victim never to tell anyone about their activities because Defendant could go to jail, that Defendant told the victim to remain dressed in case anyone entered the room, and that Defendant's cellular telephone and computer contained videos of children and adults engaging in similar behavior while undressed. (*Id.*) The complaint states that based on the victim's allegations, Defendant is subject to a final sexual violence injunction until May 2028. (*Id.* at 11.)

The detention hearing in this case was part of Defendant's initial appearance. (*See* Dkt. 33.) So that Defendant could appreciate the charge against him, the penalties he faced, the rights he could exercise, and the proceedings to come, Magistrate Judge Hoffman Price began the initial appearance by asking Defendant questions to ensure his comprehension and afforded him opportunities to seek clarification from the court and from defense counsel. (*Id.* at 0:00:25–07:12.) The audio recording of the proceedings indicates that Defendant responded to the questions in ways suggesting his comprehension. (*See id.*) In particular, when asked whether he suffered from a mental condition that could prevent his understanding, he said no. (*Id.* at 0:02:27–34.) During the detention hearing, the Government proffered the details in the criminal complaint as well as pretrial services information and other facts, and Defendant called his father as a witness and sought to be released into the father's custody. (*Id.* at 0:07:12–1:03:19.)

At the end of the hearing, Magistrate Judge Hoffman Price concluded that the Government had met its burden to establish by clear and convincing evidence that Defendant posed a danger to the community such that pretrial detention was

warranted. (*Id.* at 1:03:35–11:00.) She explained that the child pornography offense was serious and indicated great danger because it involved vulnerable minor victims in hundreds, if not thousands, of images and videos depicting extremely disturbing conduct. (*Id.*) She also observed that young children not only lived near Defendant's residence but also frequented locations near there, including elementary schools. (*Id.*) Magistrate Judge Hoffman Price related the facts from the FBI investigation, which supported probable cause for the offense charged, and she noted the August 2017 incident as well as discrepancies between Defendant's and his father's pretrial services statements regarding Defendant's history and characteristics. (*Id.*) For example, Defendant reported no mental health diagnoses whereas his father indicated that Defendant suffered from attention deficit hyperactivity and autism spectrum disorders, and Defendant acknowledged regularly consuming alcohol and using cannabinoids whereas his father was unaware of this drug and alcohol use. (*Id.*) Additionally, because Defendant's father presented himself as the potential third-party custodian for Defendant, the father's disbelief of the August 2017 incident that allegedly occurred in their residence concerned Magistrate Judge Hoffman Price. (*Id.*) Given the misconduct purportedly occurring without his parents' knowledge in their own home, she determined that the father would not be an appropriate custodian. (*Id.*) She further regarded Defendant's behavior as escalating from 2017 to the present and as doing so in the very same environment into which Defendant sought to be released. (*Id.*) After considering these and other factors, Magistrate Judge Hoffman Price ordered Defendant detained based on his dangerousness to the community. (*Id.*; *see* Dkt. 11.)

**APPLICABLE STANDARDS**

"[T]he resolution of the problems concerning pretrial bail requires a delicate balancing of the vital interests of the state with those of the individual." *Schultz v. Alabama*, 42 F.4th 1298, 1323–24 (11th Cir. 2022) (quotation omitted). "The Bail Reform Act . . . governs the release and detention of defendants awaiting trial. The Act provides for district court review of a magistrate judge's detention order." *United States v. Orr*, No. 3:15-cr-67-J-39JRK, 2015 WL 13871041, at *3, 2015 U.S. Dist. LEXIS 197868, at *5 (M.D. Fla. July 8, 2015). Specifically, section 3145(b) states that "[i]f a person is ordered detained by a magistrate" judge, "the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order," which "motion shall be determined promptly." 18 U.S.C. § 3145(b). "A district court's review of a magistrate judge's detention order is de novo." *United States v. Al-Azhari*, No. 8:20-cr-206-T-60AEP, 2020 WL 3574491, at *2, 2020 U.S. Dist. LEXIS 115954, at *4 (M.D. Fla. July 1, 2020) (quotation omitted).

The Government must establish Defendant's dangerousness to the community by clear and convincing evidence. *United States v. Francisco*, No. 2:24-mj-1015-JES-NPM, 2024 WL 887276, at *1, 2024 U.S. Dist. LEXIS 35882, at *3 (M.D. Fla. Mar. 1, 2024) (citing *United States v. King*, 849 F.2d 485, 489 (11th Cir. 1988), and *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985)). In deciding a person's dangerousness, the court must consider the factors set forth in 18 U.S.C. § 3142(g): (1) "the nature and circumstances of the offense charged, including whether the offense . . . involves a minor victim"; (2) "the weight of the evidence against the

person"; (3) "the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" and whether the person was on any form of release pending trial when the offense was committed; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

## ANALYSIS

After considering the section 3142(g) factors de novo, the court agrees with the Government and with Magistrate Judge Hoffman Price. The charged offenses, which involve minor victims, are quite serious. *See United States v. Carpenter*, 803 F.3d 1224, 1235 (11th Cir. 2015) ("[The Eleventh Circuit has] emphasized the seriousness of child pornography offenses, and the harm they inflict on their victims, time and again."); *United States v. Pugh*, 515 F.3d 1179, 1197-98 (11th Cir. 2008) ("Congress repeatedly has stressed the terrible harm child pornography inflicts on its victims, dating back to its first enactment of child pornography laws in 1977. Since that time, it has not only made detailed findings, but has expanded repeatedly criminal exposure for the possession of child pornography . . . . In light of the[] detailed legislative findings and numerous legislative enactments, [the Eleventh Circuit] cannot help but underscore the seriousness of this crime." (footnote omitted)). In fact, now that a grand jury has charged Defendant with violations of 18 U.S.C. § 2252A(a)(2),

Defendant must rebut a statutory presumption that "no condition or combination of conditions will reasonably assure . . . the safety of the community."   18 U.S.C. § 3142(e)(3)(E); *see United States v. Downs*, 406 F. Supp. 3d 1314, 1317–18 (N.D. Fla. 2019) (explaining how the presumption operates).  Defendant has not rebutted this presumption.  Strong evidence weighs against him, and his history and characteristics counsel against pretrial release.   As Magistrate Judge Hoffman Price noted, Defendant's alleged misconduct has escalated from 2017 to the present.  *See United States v. Wilks*, No. 24-10137, 2025 WL 2328147, at *10, 2025 U.S. App. LEXIS 20493, at *31 (11th Cir. Aug. 13, 2025) (affirming a sentence as substantively reasonable when the district court varied upward in light of the defendant's escalating criminal history); *United States v. Moore*, No. 3:22-mj-3-HTC, 2023 U.S. Dist. LEXIS 227823, at *5 (N.D. Fla. Dec. 21, 2023) (concluding that the danger posed by the defendant to the community required his pretrial detention, in part because his "crimes ha[d] escalated over the years").

In addition, the discrepancies between Defendant and his father regarding Defendant's history and characteristics—along with the consideration that the August 2017 incident purportedly occurred without the parents' knowledge in their own home—show that the father was not, and is not, a suitable third-party custodian for Defendant, as the father cannot adequately supervise Defendant.  *See United States v. Veres*, No. 3:20-cr-18-J-32JBT, 2020 WL 1042051, at *4, 2020 U.S. Dist. LEXIS 37294, at *9 (M.D. Fla. Mar. 4, 2020) ("To reasonably protect any individual and the community, [the defendant] would need a custodian who could more closely

supervise him . . . ."); *United States v. Artega*, No. 2:16-cr-93-FtM-99MRM, 2016 U.S. Dist. LEXIS 143715, at *5 (M.D. Fla. Oct. 18, 2016) (ordering the defendant detained when his proposed third-party custodian's "ability to supervise [him] pending his trial" was unsatisfactory); *see also United States v. Barge*, No. 2:13-cr-110-MEF, 2013 WL 6009548, at *5 n.3, 2013 U.S. Dist. LEXIS 161553, at *13 n.3 (M.D. Ala. Nov. 13, 2013) ("[A third-party custodian] cannot prevent [the defendant] from re[]engaging in criminal activity and therefore cannot reasonably assure the safety of the community."). Moreover, the number of minors around Defendant's proposed residence counsels against release. *See Orr*, 2015 WL 13871041, at *4, 2015 U.S. Dist. LEXIS 197868, at *14 ("[T]he [c]ourt is hesitant to release back into the community a defendant who is alleged to have [attempted to entice a minor to create and send sexually explicit images]. Less invasive measures, such as home confinement with electric monitoring, would not prevent the [d]efendant from coming into contact with other minors. Given the severity of the consequences that would ensue if additional crimes against a minor were to occur, the [c]ourt finds that [the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release] also weighs in favor of detention."). For all these reasons, clear and convincing evidence establishes that Defendant presents a danger to the community. Accordingly, Defendant must remain detained.

## CONCLUSION

After an independent de novo review of the record, Defendant's motion (Dkt. 25) is **DENIED**, and the pretrial detention order (Dkt. 11) is **ADOPTED**.

- 9 -

**ORDERED** in Orlando, Florida, on February 9, 2026.

JULIE S. SNEED

UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record